WESTERN UNION TELEGRAPH CO. v. HOLCOMB. (No. 70–2828.)

(Commission of Appeals of Texas, Section B. April 2, 1919.)

1. TELEGRAPHS AND TELEPHONES ⟜48—ERRORS IN ADDRESSEE'S NAME—NEGLIGENCE OF EMPLOYÉ—AGENCY FOR SENDER.

Error of telegraph company's employé in writing addressee's name was not chargeable to the company, where he wrote telegram at sender's request, since in writing telegram he was acting as agent of sender and not of the company.

2. TELEGRAPHS AND TELEPHONES ⟜66(4)—NEGLIGENCE OF TELEGRAPH COMPANY—SUFFICIENCY OF EVIDENCE.

Evidence *held* to sustain verdict finding telegraph company negligent in failure to deliver message announcing death of addressee's brother in time to permit addressee to attend funeral, notwithstanding error in statement of addressee's name.

Appeal from Court of Civil Appeals of Second Supreme Judicial District.

Action by Fayette Holcomb against the Western Union Telegraph Company. Judgment for plaintiff was affirmed by Court of Civil Appeals (175 S. W. 750), and defendant brings error. Affirmed.

Arch Grinnan, of Brownwood, Francis R. Start, of New York City, and Thompson, Barwise, Wharton & Hiner, of Ft. Worth (Geo. H. Fearons, of New York City, of counsel), for plaintiff in error.

Smith & Palmer, of Comanche, for defendant in error.

MONTGOMERY, P. J. This suit was brought by Fayette Holcomb against the telegraph company to recover damages on account of an alleged negligent failure on the part of the company to deliver a telegram informing him of the serious illness of his brother, Jess Holcomb.

The plaintiff alleged that by reason of the negligence of the company he was prevented from being present at his brother's funeral.

As the plaintiff in error relies entirely upon the insufficiency of the evidence, it is necessary for us to set out such of the facts as we deem necessary to support the conclusion reached by us.

Fayette Holcomb, the plaintiff, lived near Downing, a village in Comanche county, situated about eight miles from De Leon, a station on the Texas Central Railway Company and about ten miles from the town of Comanche on the line of the St. Louis & San Francisco Railroad. His brother, Jess Holcomb, at the time of his death lived about nine miles from Mt. Pleasant, in Titus county.

On March 18, 1911, Mrs. Lena Raney, a sister of Fayette and Jess Holcomb, who lived with or near Jess Holcomb, requested one Tigert to send a telegram to Fayette Holcomb informing him of the serious illness of his brother Jess, and that he was not expected to recover.

On that day Tigert went to the office of the telegraph company at Mt. Pleasant and informed the agent that he desired to send the telegram, and the agent at his request wrote the telegram as dictated by him. After the telegram was written, it was read over to Tigert by the agent and was also read by Tigert. The telegram thus prepared and approved by Tigert read:

"Mt. Pleasant, Texas, March 18, 1911. Fate Hawkins, De Leon, Texas. Brother Jess sick. No chance for him. Come at once. Lena Raney."

Tigert testified that he informed the agent at Mt. Pleasant that Fayette Holcomb, the addressee of the telegram, lived near Downing, and that he had a telephone in his house, and that there was a telephone connection with De Leon. This telegram was sent as written above, and was promptly received at De Leon, and the agent at De Leon made considerable inquiry, but was unable to locate the party addressed. It will be noted that the name of the party for whom the telegram was intended was "Fayette Holcomb," while the telegram was addressed to "Fate Hawkins."

The agent at De Leon not having been able to deliver the message in the afternoon of the 18th of March, 1911, sent the Mt. Pleasant agent the following service message:

"Yours date signed Raney undelivered. Cannot locate party."

The agent at Mt. Pleasant received this message at 4:30 p. m., on the 18th, and at once, according to his testimony, attempted to get into communication with Mrs. Raney by telephone, but was unable to do so until about 8 o'clock a. m. of the next day, the 19th. Mrs. Raney testified that she talked to the agent at Mt. Pleasant at 8 o'clock a. m., on the 19th, and that she then told the agent that Fayette Holcomb, the party for whom

the telegram was intended, lived near Downing, a little town about eight miles from De Leon, and that there was at Downing a central telephone office and that Fayette Holcomb had a telephone and could be reached through Downing. On the same day, that is, on the 19th, at 10:20 a. m., the Mt. Pleasant agent wired the De Leon agent as follows:

"Received at De Leon Texas SYS 18th, Fate Hawkins signed Raney. Raney/claims party lives at village of Downing about eight miles in the sticks and has 'phone connection with De Leon. Advise delivery."

This message was received at De Leon about 3 o'clock p. m. the same day. Office hours at De Leon on Sunday, the 19th being Sunday, were from 8 to 10 a. m., and 3 to 5, or 4 to 6 p. m. The De Leon agent testified that, after getting this message, he tried to get Downing over the telephone, but was not able to do so; that he knew the telephone agent, but did not see him, and made no effort to see him, although he lived in De Leon, which was a town of about 1,200 inhabitants. The evidence shows that in some way on the afternoon of the 19th the De Leon agent learned that the telegram was probably for Fayette Holcomb. On Monday morning, the 20th, the De Leon agent got Fayette Holcomb over the telephone by calling him through Downing and read the message to him. What transpired after between the two agents of the telegraph company is immaterial. The evidence shows that Jess Holcomb died about 4 o'clock p. m. on Sunday, the 19th day of March, 1911, and was buried the next day the 20th at 4 o'clock p. m. He was buried at a cemetery about nine miles from Mt. Pleasant. After receiving the message, as shown above, Fayette Holcomb immediately went to De Leon, and about 12 o'clock, on the 20th, telephoned to a friend at Mt. Pleasant and was informed of his brother's death and that he would be buried at 4 o'clock p. m. of that day. He made no request for a postponement of the funeral and did not go. The telephone agent at De Leon testified that there was telephone connection between De Leon and Downing and that on Sunday full service was not given between 9 o'clock a. m. and 6 o'clock p. m., but that the telephone company did furnish service between those hours in case of emergency, such as sickness, calls for doctors, and death calls. The evidence also tends to show that on the 19th the agent at De Leon could have reached Fayette Holcomb by telephone had he used the necessary diligence. There is evidence that had Fayette Holcomb received the telegram, or had it been communicated to him at any time before 11 o'clock in the forenoon of the 19th, he could and would have responded to the call and have reached Mt. Pleasant in time to have been present at his brother's funeral.

There was a St. Louis & San Francisco train leaving Comanche at 12:50 noon on the 19th, which reached Ft. Worth in time to connect with the train leaving there which reached Mt. Pleasant at 4:50 a. m. the following morning. This was the last train on the St. Louis & San Francisco Railway Company by which Holcomb could have gone and arrived in time for the funeral.

There was a train which left De Leon at 2 o'clock p. m. on the 19th, going to Waco, and by leaving on this train Fayette Holcomb could have reached Mt. Pleasant at 4:30 a. m. the following morning, and thus have been present at the funeral. There was no other train by way of Waco except one leaving De Leon at 1:25 a. m., and there was no evidence that by taking this train Mt. Pleasant could have been reached in time for the funeral.

The plaintiff recovered judgment in the district court, which was, after a portion of the recovery had been remitted, affirmed by the Court of Civil Appeals. 175 S. W. 750. The telegraph company applied for and obtained a writ of error.

## Opinion.

[1] The error in the telegram stating the name of the person addressed as Fate Hawkins, instead of Fayette Holcomb, is not chargeable to the telegraph company, as the agent of the telegraph company, in writing the telegram at the request of the person sending it, was acting as the agent of the sender and not of the telegraph company. Western Union Telegraph Co. v. Edsall, 63 Tex. 668; Western Union Telegraph Co. v. Foster, 64 Tex. 220, 53 Am. Rep. 754.

The question, then, is whether, notwithstanding the fact that the name of the addressee of the telegram was not properly given, there was evidence tending to show that the telegraph company by the use of proper diligence could have delivered the telegram at such time that Fayette Holcomb could have been present at his brother's funeral.

[2] The evidence of Tigert, who acted for Mrs. Raney in sending the telegram, was that he at the time the telegram was sent told the agent where Fayette Holcomb lived, and that he could be reached by telephone through Downing, and that he had a telephone in his house. The agent at De Leon in the afternoon of the 18th, the day the message was sent, reported to the sending office his inability to deliver the message. The effect of this was to ask for a better address. If the agent at Mt. Pleasant had then informed him of the facts which Tigert testified he had communicated to him, it is at least probable that the agent at De Leon by inquiry from the telephone company at Downing could, notwithstanding the error in the name, have delivered the message on the 18th, or early in the day on the 19th, and

in ample time for Fayette Holcomb to have left on the train leaving Comanche at 12:45 p. m., or the train leaving De Leon at 1:45 p. m., and that by either route he could have reached Mt. Pleasant early in the morning of the 20th. Again, we think that if it be true, as testified by Mrs. Raney, that at 8 o'clock on the 19th she told the operator at Mt. Pleasant the true name of the addressee in the telegram and gave him full information as to how he could be reached, the evidence at least tends to show that by proper diligence a message could have been sent and received at De Leon giving full information as to the method to be adopted in delivering the telegram, and that such message would have been received during office hours at De Leon on the morning of the 19th, and communicated to Fayette Holcomb in time for him to have taken a day train on that day either at De Leon or Comanche. In this state of the evidence, we cannot say there is no evidence authorizing the verdict and judgment.

We advise that the judgment of the Court of Civil Appeals be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes