WESTERN UNION TELEGRAPH COMPANY V. JOHN GUITAR.

No. 4811.  Decided May 18, 1927.

(295 S. W., 598).

1.—Telegraph—Interstate Commerce—Conditions Affecting Rate—Unre-
peated Message—Notice of Claim.

A telegraph company filed with the Interstate Commerce Commission, by
whom same were posted and published, the regulations governing its rates
for interstate messages, that for unrepeated messages denying any recovery
unless claim for damages was presented in sixty days. This provision for
presentation of claim was one of the conditions by which the rate for an
unrepeated message was fixed, and this, being required to be a uniform

charge by the common carrier to all patrons under the same conditions, could not be waived by the carrier in favor of the sender of any particular message.   (Pp. 503-506).

### 2.—Same—Waiver of Notice.

Being without power to waive the condition requiring notice of claim within sixty days, the action of the carrier in printing on the back of the blank form of messages used, as a condition for the rate for an unrepeated interstate message, a provision that the carrier would not be liable for any damage unless claim therefor was presented in ninety-five days, the state regulation for local messages, did not operate as a waiver of the requirement of notice in sixty days.   (Pp. 506-508).

Questions certified from the Court of Civil Appeals for the Eleventh District, in an appeal from Taylor County.

The Supreme Court referred the questions certified to the Commission of Appeals, Section B, for its opinion thereon, and here adopt and certify same as their answer to the questions.

*Wagstaff, Harwell & Wagstaff, William H. Flippen,* and *John W. Miller,* for appellant.

By the provisions of the Act of Congress and the rules of the Commission, telegraph companies were and are now required to file their schedules or tariffs and rates with the Commission, and when so filed, such schedules become binding upon the company filing them and upon its patrons.   By the terms of the act in question a telegraph company is not only required to file its tariffs and rates with the Interstate Commerce Commission, but in addition is required by law to enforce such tariffs and rates equally and impartially with regard to all who use its lines for the transmission of telegrams, and is prohibited under the express penalty of a heavy fine, from discriminating as to rates charged or services rendered.   Article 8653, U. S. Compiled Statutes, et seq., Postal Telegraph Co. v. Warren Godwin Lumber Co., 251 U. S., 27; Western Union Tel. Co. v. Esteve Bros., 256 U. S., 566; Gardner v. Western Union Tel. Co., 231 Fed., 405, 243 U. S., 644; Boegli v. Western Union Tel. Co., 251 U. S., 315; Dickerson v. Postal Tel. Co., 254 U. S., 609; Western Union v. Southwick, 255 U. S., 565; Speight v. Western Union, 254 U. S., 17; Western Union Tel. Co. v. Kilgore, 220 S. W., 553; Western Union Tel. Co. v. Epley, 218 S. W., 528; Western Union Tel. Co. v. Price, 219 S. W., 869; Western Union Tel. Co. v. King, 224 S. W., 318; Western Union Tel. Co. v. Woods, 266 S. W., 179.   These cases firmly and unquestionably established the following propositions of law in so far as the law relating to interstate messages is concerned:   One: The Tariffs, rates, charges and stipulations limit-

ing liability are to be filed with the Interstate Commerce Commission. Two: When so filed and declared reasonable by such commission, they become binding on both the Telegraph Company and the sender of any message, and no departure therefrom can be made by either the transmitting agency or the sender. Three: Persons sending messages are charged with notice of the tariffs and rates and are charged with notice of the limitations of liability. Four: The tariffs, rates and limitations of liability must be enforced by the Company equally and impartially towards all who apply for services, and cannot be waived.

Because of the strict requirements of the act herein referred to, the courts hold that a telegraph company is not only prohibited from indulging in discrimination among patrons as to rates and charges made, but that it is prohibited as well from indulging in discrimination as to services rendered, or as to the imposing and enforcing of limitations of liability. The stipulation herein being considered, which appellant was not permitted to introduce in evidence in the trial court, and which action of the court, appellant assigned as error in the Court of Civil Appeals, was one limiting liability and was on file with and approved by the Interstate Commerce Commision, of which the sender was charged with notice, binding alike the company and the sender, which stipulation could not be waived by the telegraph company for the reason that any such waiver would be a discrimination by the company in favor of the sender of this particular message.

*Kirby, King & Overshiner,* for appellee.

The appellee regards the case of the Western Union Telegraph Co. v. Czizek, 264 U. S., 281, opinion rendered by Justice Holmes on February 26, 1924, as conclusive against the contention of appellant that the stipulation of time in which a notice for claim for damages shall be presented is a part of the rate.

It is obvious that the effect of the opinion of this court in answers to the certified questions will be the violation of some of the fundamental principles of the law. First, the plaintiff will be deprived of his rights by the wrongful conduct of the defendant; second, the defendant will be allowed to profit by its own wrong; and third, the effect of the decision will be to leave the plaintiff remediless.

This is all brought about by this court applying what it conceives as a hard and fast rule which is not announced, but which possibly might be deduced from expressions in the Esteve and Warren Godwin Company cases. In doing so, this court has done something which the Supreme Court of the U. S. would not

do itself. For if the rule announced in this case is to be found in the above cases, the Supreme Court of the United States has little respect for it, and it is abrogated in the case of W. U. Tel. Co. v. Czizek, 264 U. S., 281, 68 L. Ed. 682, so far as the notice of claim for damages is concerned.

MR. JUDGE SHORT delivered the opinion of the Commission of Appeals, Section B.

The following questions have been certified to the Supreme Court by the Court of Civil Appeals of the Eleventh Supreme Judicial District to be answered, and the matter has been referred to this Section of the Commission for consideration to-wit:

"The above styled cause is now pending before this court. In view of the matters hereinafter related, it has been deemed advisable to certify to Your Honors the questions hereinafter propounded and as a predicate therefor the following statement is submitted:

"The appellee brought suit to recover damages alleged to have been sustained by him on account of the alleged negligent failure of appellant to deliver an interstate message filed with appellant's agent at Abilene, Texas, for transmission and delivery to the addressee at Loving, New Mexico. It is believed that the pleadings and evidence with respect to the plaintiff's right to recover the damages awarded him are in all respects sufficient, except for the matters hereinafter stated, and that, therefore, a detailed statement of the pleadings and evidence is rendered unnecessary. For the purpose of this certificate it is deemed sufficient to state that the plaintiff's evidence showed negligence in respect to the delivery of said telegram and that resulting from said negligence, the plaintiff suffered damages in the sum of $2,900.00. The message, which was not repeated, was written upon a blank furnished to appellee by the company and contained on the back thereof this provision:

" '6. The Company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within 95 days after the message is filed with the company for transmission.'

"Among other defenses, appellant pleaded that it had filed with the Interstate Commerce Commission of the United States, prior to the transactions upon which the instant suit is based and as required by law, certain rules and regulations which governed the receiving and sending of a telegram, and that said rules and regulations had been posted and published by said Interstate Commerce Commission as required by law, and were

effective at the time of the sending of the telegram in contro-
versy. That said rules and regulations were and became a part
of the contract of transmission between the plaintiff and the
defendant.    That the message in question was an unrepeated
message and transmitted at the rate for such messages, and that
among the rules and regulations so effective, were the following:

" 'The company shall not be liable for mistakes or delays in the
transmission or delivery or non-delivery of any message re-
ceived for transmission at the unrepeated message rate beyond
the sum of $500.00.'

"And another to the effect that:

" 'The Company will not be liable for damages or statutory
penalties in any case where the claim is not presented in writing
within 60 days after the message is filed with the company for
transmission.'

"The appellee alleged as a part of his original petition, and
proved the filing by appellee with appellant of his claim for dam-
ages at a date more than sixty days after the message was filed
with the company for transmission, but within ninety-five days
thereafter. On the trial the court admitted in evidence the tariffs
and schedules filed by the appellant with the Interstate Com-
merce Commission on the 13th of May, 1921, containing the pro-
vision that the defendant's liability for the negligent transmis-
sion or delivery of an unrepeated interstate message should not
exceed the sum of $500.00, and instructed the jury that in the
event verdict was for the plaintiff, that the damages could not
exceed the said sum last named and verdict was returned for
the plaintiff for the sum of $500.00.

"Upon objection by the plaintiff, the court excluded that por-
tion of said tariffs and schedules so filed by the appellant with
the Interstate Commerce Commission, which provided that the
company would not be liable for damages or statutory penalties
in any case where the claim was not presented in writing within
sixty days after the message was filed with the company for
transmission.

"Exception was duly taken to the exclusion of the testimony
as stated and the exception perpetuated by a proper bill of ex-
ception.

"Appellant's pleadings presenting the matter just referred to
were not sworn to.

"It is the contention of appellant that the exclusion by the
court of the provision with respect to sixty days notice was a
reversible error in that if the evidence had been admitted it
would have been the duty of the court to have given appellant's

requested peremptory instruction, inasmuch as the pleading and testimony of the plaintiff showed that the claim for damages was not filed until after the expiration of sixty days from the date of delivery to appellant and transmission by it of the telegram in question. To sustain this contention appellant relies upon Secs. 8563, 8564, 8569 and 8597 U. S. Compiled Statutes, and the cases of Western Union Telegraph Company v. Esteve Bros, 65 L. Ed., 1094; Kerns v. Western Union Telegraph Company (Mo. App.), 198 S. W., 1132, and Western Union Telegraph Company v. Woods, 266 S. W., 179. The last case by the Court of Civil Appeals for the Sixth District. The Missouri case and the case by the Texas Court appear to us to sustain appellant's contention in that the decision in each of those cases is predicated upon the proposition that the provision in the tariff and schedules filed by appellant respecting the time for filing claims for damages became a part of the rate and cannot be waived.

"Appellee's position is that the stipulation in the tariffs and schedules filed as to the time within which claims for damages may be filed is no part of the rate and did not become a condition upon which the message in question was received and sent, but was for the benefit of the Telegraph Company and waived by it; and second, that the appellant could only raise this question by a sworn plea, and in that regard relies upon the cases of Aetna Casualty & Insurance Company v. Austin, 285 S. W., 951, and Thomason v. Berry, et al., 276 S. W., 185.

"It is our judgment that if the appellant's contention that the time within which to file a claim for damages is a part of the rate and a condition upon which the message was accepted by the appellant, that the trial court was in error in excluding the testimony, and that the said testimony, if admitted, would have required an instructed verdict for the appellant, but we are not inclined to follow the Missouri case nor the case from the Sixth District, and we do not construe the decision in the case of Western Union v. Esteve Bros., supra, as holding that the stipulation as to the time within which claim for damages may be asserted is part of the rate or a condition upon which said message was accepted. We are also of the opinion that such time was waived by appellant by inserting the stipulation copied on the back of the telegram as shown above, giving the appellee ninety-five days in which to file his claim for damages.

"Under the circumstances, we, therefore, deem it advisable to certify to Your Honors the following questions:

"Question No. 1: Was the stipulation in the tariffs and schedule filed by the appellant as to the time a claim for damages must be filed, and offered in evidence by it, a part of the rate and a

condition upon which the message was received by the appellant which could not be waived by it?

"Question No. 2: Did the stipulation in the telegram giving appellee ninety-five days in which to file his claim for damages as stated above, constitute a waiver by the appellant of that part of its tariff and schedule filed with the Interstate Commerce Commission requiring such claims for damages to be filed within sixty days?"

We have concluded that the first question should be answered in the affirmative, and the second question in the negative, in support of which conclusion we have deemed it proper to make some observations.

Since June 18, 1910, when the Act to regulate commerce became a law, the scope of the original Act passed in 1887 was broadened to include telegraph companies engaged in sending messages from one State to another or from a State to any foreign country. By the terms of that Act, as well as by the terms of the Act of 1920 amending that of 1910, a telegraph company is a common carrier and the rules applicable to common carriers are applicable to this character of corporation. Paragraph 8563. The Interstate Commerce Act, paragraph 8564, prohibits a common carrier from charging any one a greater or less compensation for any service than another under substantially the same or similar circumstances or conditions. By paragraph 8565 undue preferences are prohibited. According to paragraph 8569 every common carrier is required to file with the Commission and print and keep open to public inspection schedules showing all the rates, fares and charges for transportation between different points on its own and connecting lines.

In Gardner v. Western Union Telegraph Company, 231 Fed., 406, which involved the construction of a night letter wherein the charge was for an unrepeated message, and wherein it was stated that the company would not be liable for damages in any case where the claim was not presented within sixty days after the message is filed with the company for transmission, this latter clause being in the same language as that quoted in the certificate, the proof was substantially the same as in this case. An instructed verdict was returned in favor of the telegraph company. The only difference is, that the sendee was the plaintiff in the case, but under the American rule the person receiving a message is bound by the contract made by the company with the sender. In other words, in that case, the action was not upon a contract, but for damages arising from the failure on the part

of the company to perform a duty which under the law it owed to the plaintiff. As said in the Gardner case on this supject:

"Negligence arises from a violation of duty owing by one person to another. If there is no duty, there is no negligence. Without the contract the latter owed plaintiff no duty and hence there could be no negligence in the absence of contract. So it plainly appears that plaintiff would have no cause of action except for the contract because the duty of the company arose from the contract. May the plaintiff charge the company with the duty arising from the contract and at the same time repudiate one of the conditions upon which the duty was assumed? We think not."

This quotation is supported by the citation of many authorities, among which is that of Western Union Telegraph Company v. Culberson, 79 Texas, 65. In that case there was a stipulation requiring a claim to be presented within thirty days, although there was an oral agreement the effect of which was to give the party sixty days within which to present a claim. The facts showed the contract, the failure to perform it, damages resulting from the failure to perform, but further showed that the claim was not presented within thirty days. The Supreme Court of this State, through Judge Gaines, in reversing the judgment of the District Court says:

"We think the court erred in holding that stipulation was not binding. This court held in the case of the Western Union Telegraph Company v. Rains, 63 Texas, 27, that such a stipulation for the presentation of the claim for damages was not unreasonable, and was obligatory upon the parties."

This decision, however, was rendered previous to the enactment of Article 5546, Revised Statutes of 1925, which prohibits any stipulation of the character mentioned to be less than ninety days, and we only advert to it for the purpose of showing that in the absence of any statute, the only question to be decided is, whether such a character of stipulation is reasonable and just. Since that time in interstate transactions Article 5546 controls. Likewise, since the enactment of the Interstate Commerce law of 1910 as amended in 1920, interstate transactions are governed by the Federal law. Whether the limitations of sixty days quoted in the certificate was a part of the rate is directly decided in Gardner v. Western Union Telegraph Company, supra, the opinion of which was approved in 243 U. S., 644, by the refusal of certiorari, and expressly approved by the Supreme Court of the United States in the case of Postal Telegraph-Cable Co. v. War-

ren-Godwin Co., 251 U. S., 27, in which the following language appears:

"*In consideration of this rate Scoville agreed* that the company should not be liable for·damages or statutory penalties in any case where the claim was not presented in writing within sixty days after the message was filed with the company for transmission."

The Interstate Commerce Commission is authorized by the law to determine what is a just and reasonable regulation or practice. According to the certificate, this Commission has determined that this provision quoted in the certificate is a just and reasonable regulation, and Congress having not only taken possession of the field of interstate commerce by telegraph, but specifically prescribed rules which shall govern the transaction of such commerce, the action of the Interstate Commerce Commission has the force of law and is binding upon the public, whether the individual members of the public have personal knowledge of the action of the Commission or have no such knowledge. As said by the Supreme Court of the United States in Western Union Telegraph Company v. Esteve Bros., 256 U. S., 573:

"The rule does not rest upon the fiction of constructive notice. It flows from the requirement of equality and uniformity of rates laid down in paragraph 3 of the Act to regulate commerce. Since any deviation from the lawful rate would involve either an undue preference or unjust discrimination, a rate lawfully established must apply equally to all whether there is knowledge of it or not."

In Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U. S., 190, which was a suit for damages growing out of the conversion of a car of flour by the railroad company after it had failed to deliver the flour to the consignee, and wherein there was a clause with respect to notice of claims, the court uses this language:

"When the goods have been misdelivered there is as clearly a failure to make delivery as when the goods have been lost or destroyed; and it is quite as competent in the one case as in the other for the parties to agree upon reasonable notice of the claims as a condition of liability. * * * But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different

view would antagonize the plain policy of the Act and open the door to the very abuses at which the Act was aimed."

In Postal Telegraph-Cable Company v. Warren-Godwin Company, 251 U. S., 27, the syllabus, which is as follows, states the principle announced therein:

"Under the Act of June 18, 1910, a telegraph company providing one rate for unrepeated interstate messages and another higher rate for those repeated, may stipulate for a reasonable limitation of its responsibility when the lower rate is paid; and the validity of such contracts is not determinable by State laws."

In the case last cited the opinion of the Circuit Court of Appeals of the Eighth District in Gardner v. Western Union Telegraph Company, supra, is cited with approval.

In Williams v. Western Union Telegraph Company, 275 S. W., 570, the Court of Appeals of Missouri say in effect that stipulations based on a particular rate or classification made by the telegraph company relative to interstate messages have binding effect of law which neither the company nor its patrons may depart from. The same court holds that provisions affecting claims for damages cannot be waived and that compliance therewith must be established. Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U. S., 190.

However, it may be contended, and in fact is asserted, by the appellee in the Court of Civil Appeals, as well as here, that this provision as to notice of the claim for damages being given within sixty days is not a part of the rate and therefore the provision on the back of the telegram giving the appellee ninety-five days within which to give such notice is a contract binding upon both parties. We do not agree with either contention. In the first place, the ninety-five-day provision on the back of the message was in plain and direct contradiction of the regulation filed with and approved by the Commission and duly published as the law in such cases provides, which stated that a claim for damages must be filed within sixty days after the message is filed for transmission. This action of the Commission having the force of law, as the Supreme Court of the United States has declared and which the Act itself creating the Commission so declares, nothing that the parties could say or do could affect this particular provision. As has been declared by the Supreme Court of the United States in the cases from which we have quoted, the stipulations approved by the Interstate Commerce Commission cannot be waived by the parties, so, the ninety-five-day provision quoted in the certificate has no legal effect upon the rights of the parties nor upon their duties under the facts

in this case as presented in the certificate. In this connection it may be incidentally stated, however, that the appellee had a cause of action immediately for the damages sustained, if in fact he sustained any, by reason of having been misled to his detriment by the provision giving him ninety-five days in which to file a claim for damages. The Interstate Commerce Commission Act provides for just such contingencies and gives to injured parties adequate remedies when duly taken within the time prescribed by the law. See paragraph 7902, Barnes Federal Code, Cumulative 1923 Supp.

It is a matter of common knowledge that it is to the benefit of common carriers from pecuniary standpoint to be allowed to require notices of claims for damages to be filed within as short a time as possible after the damage has resulted. It is also a matter of common knowledge that common carriers exercised this privilege and provided brief periods within which claims for damages might be filed to such an extent that previous to the Act of 1910 by Congress the Legislatures of many States enacted legislation depriving common carriers of the privilege of unduly restricting this period of time. We have in Texas a statute on this subject the effect of which is, that no stipulation requiring notice of a claim for damages less than ninety days is binding. This statute is illustrative of the situation with which the Legislatures had to deal and with which Congress did in fact deal when it enacted the Interstate Commerce Act. All these laws, both Federal and State, on this subject lay down the broad principle that common carriers have a right to restrict the time within which notice of a claim for damages shall be filed in the absence of statutory inhibition, provided the time allowed is reasonable and just. It is also a matter of common knowledge that common carriers fix their rates for services agreed to be rendered with reference to the time within which claims for damages may be under the law presented, so as to enable the claimant to recover the damages suffered. The fact that it is also a matter of common knowledge that the shorter the time the easier it is to collect information about the transaction, does not in the least impair the force of the fact first stated. If the law permits and the company prescribes a very brief period within which claims for damages may be filed the company is enabled to conduct its business with a profit for a less sum of money than it would be able so to do if the time limit for the filing of such claims was greatly increased. This fact is founded upon the experience gained from the carrying on of the business of a common carrier. While the truth of the statement is not

so clearly susceptible of demonstration as a mathematical proposition, it is so nearly so that men of ordinary prudence are willing to act on it.

In Western Union Telegraph Company v. Woods, 266 S. W., 179, our Court of Civil Appeals at Texarkana in upholding the validity of this sixty days clause as a part of the rate, says:

"The limitation of liability, formally adopted and filed and approved by the Interstate Commerce Commission pursuant to the Federal Act, became the lawful condition upon which the messages were received and sent. It was not in the nature of a simple contract of the parties, subject to their will and abrogation, unaffected by public concern or law. Consequently the company could not waive the condition, and estoppel would be unavailing. Kerns v. W. U. Tel. Co., 198 S. W., 1132; Western Union Telegraph Co. v. Esteve Bros. & Co., 256 U. S., 566; Georgia, Florida & Alabama R. Co. v. Blish Milling Co., 241 U. S., 190."

This case, the Gardner case, and the Kerns case, the latter being a decision by the Supreme Court of Missouri, are the only cases we have been able to find which directly involved the determination of the first question stated in the certificate, and the likelihood is that there are no other cases directly bearing on this question which have reached the appellate courts. However, we believe that the three cases mentioned correctly determine the law applicable to this particular question.

It necessarily follows that we are compelled to recommend that the first question be answered in the affirmative and the second question in the negative as above stated.

Opinion of the Commission of Appeals answering certified questions adopted, and ordered certified to the Court of Civil Appeals.

> *Thos. B. Greenwood,* Associate Justice.
> *William Pierson,* Associate Justice.